# In the
# United States Court of Appeals
## For the Seventh Circuit

───────────

No. 04-1421

BRENDA LARAMORE,

*Plaintiff-Appellant,*

v.

RITCHIE REALTY MANAGEMENT COMPANY,

*Defendant-Appellee.*

───────────

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 1333—**George M. Marovich**, *Judge.*

───────────

ARGUED NOVEMBER 12, 2004—DECIDED FEBRUARY 9, 2005

───────────

Before BAUER, MANION, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* Brenda Laramore sued Ritchie Realty Management Company ("Ritchie") claiming that Ritchie violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 (the "ECOA") when it informed her that she could not apply to rent an apartment it managed because she received public assistance. The district court dismissed Laramore's complaint on the ground that the rental of residential property is not a credit transaction covered by the ECOA. We affirm.

I.

Laramore receives federal assistance pursuant to Section Eight of the United States Housing Act, 42 U.S.C. § 1437f. "Section [Eight] is a federal program designed to assist the elderly, low income, and disabled pay rent for privately owned housing." *Allen v. Muriello*, 217 F.3d 517, 518 (7th Cir. 2000). The assistance generally comes in the form of a voucher (often called a "Section 8 Voucher") that the recipient can use to pay a portion of their rent.

In October 2002, Laramore began a search for a new apartment for herself and her four children. She found a prospective apartment in Chicago via a search on the Internet. On October 21, 2002, after viewing the apartment, Laramore telephoned Ritchie, the company responsible for managing the apartment, to request an application for a lease. The woman who took the call initially told Laramore that the apartment was available to rent. After Laramore informed her that she intended to use a Section 8 Voucher to pay a portion of the rent, however, the woman told Laramore that the apartment was not available to persons using Section 8 Vouchers.

On February 21, 2003, Laramore filed suit in the United States District Court for the Northern District of Illinois (Eastern Division). In her suit, Laramore claimed that Ritchie and others not party to this appeal (the apartment's owners) violated the ECOA by denying her a rental application because she receives public assistance. Ritchie moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that a rental application is not a credit transaction under the ECOA. The district court agreed with Ritchie and dismissed the suit. This appeal followed.

## II.

We review de novo the dismissal of a complaint pursuant to Rule 12(b)(6). *Cole v. U.S. Capital*, 389 F.3d 719, 729 n.10 (7th Cir. 2004). "If the statute under which the plaintiff sued provides no relief in the circumstances alleged, the district court's decision was appropriate." *Pawlowski v. N.E. Ill. Reg'l Commuter R.R. Corp.*, 186 F.3d 997, 1000 (7th Cir. 1999).

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a)(2). The ECOA is Title VII of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r (the "CCPA").

A "creditor" is defined for the purposes of the ECOA as "any person who regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e). "Credit" is, in turn, defined by the ECOA as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

The question in this case, therefore, is whether Ritchie was acting as a creditor when it denied Laramore an application to rent the apartment she was interested in because the apartment was not available to persons receiving Section 8 Vouchers. As can be seen above, whether Ritchie was acting as a creditor is determined by whether Ritchie regularly extends credit. Put more clearly, Ritchie is a creditor if a residential lease amounts to the right of a lessee to defer payment of a debt for the purchase of property or services already purchased.

The district court found that a residential lease was not an extension of credit because a lease is not a deferred payment of a debt, "but prepaid advancement[ ] of a debt for contemporaneous use." *Laramore v. Ritchie Realty Mgmt. Co.*, No. 03 C 1333, 2003 WL 22227148, at *1 (N.D. Ill. Sept. 21, 2003). The district court also noted that the Federal Reserve Board (the "Board") has stated that the ECOA should not be construed to cover lease transactions.

Laramore argues that a residential lease is an extension of credit. Laramore argues, in effect, that a residential lease is an agreement for occupancy for a term (typically a year) and that the agreement creates a debt as of the time of the agreement and that the lessee pays off the debt over the period of the term. In other words, when the lessor and the lessee sign a lease, the transaction is complete— the lessee has the right to use the premises for the duration of the term of the agreement and the lessee is paying off the amount owed for the entire term on a month-by- month basis. Another way of looking at it is that a tenant's monthly payments are not for the month's occupation of the apartment when the rent is paid (i.e., November's rent) but instead, simply 1/12th of the year's rent.

Courts that have considered whether leases are credit transactions are split. In *Brothers v. First Leasing*, 724 F.2d 789 (9th Cir. 1984), the Ninth Circuit held the ECOA applies to *consumer leases*.[1] The court concluded that applying the

---

[1] Because the Ninth Circuit's decision in *Brothers* concerned consumer leases, a term defined for the purposes of that case as personal property, *see Brothers*, 724 F.2d at 792 n.7, our decision in this case, as it is concerned with residential leases, is not in direct conflict and does not create, therefore, a split amongst the circuits. To our knowledge, this court is the only circuit court that

(continued...)

ECOA to consumer leases "is essential to the accomplishment of the [CCPA's] anti-discriminatory goals." *Id.* at 794. The court did note that it was "unclear" that the ECOA, when first enacted, applied to consumer leases. *Id.* at 793. The court concluded, however, that amendments to the Truth in Lending Act, 15 U.S.C. §§ 1601-1666j ("TILA"), another title of the CCPA, extending TILA's disclosure requirements to consumer leases suggested that the same should be done to the ECOA.

The Northern District of Illinois, in an unpublished decision, held that the ECOA applied to a lease transaction involving a mobile home. *Ferguson v. Park City Mobile Homes*, No. 89 C 1909, 1989 WL 111916, at *3 (N.D. Ill. Sept. 18, 1989). The court, however, provided little analysis to support its decision. It did note that it did not follow the Ninth Circuit's analysis in *Brothers*, but concluded that "the language of the ECOA is certainly broad enough to cover the lease of a mobile home lot." *Id.* at *3. The court's decision also appears to have been motivated, at least in part, by the poor performance by counsel opposed to applying the ECOA. *Id.* ("[The defendant] has cited no case authority whatever in bringing its motion to dismiss, and its argument is almost wholly conclusory with no analysis of the interplay between the statutory provisions.").

The Western District of Washington, relying on *Brothers*, has held that the ECOA applies to cellular phone ser-

---

[1] (...continued)
has addressed the applicability of the ECOA to residential leases. Although as we discuss below, we find persuasive for our inquiry concerning residential leases the Board's conclusion that the ECOA does not cover leases, we save for another day the question of whether the ECOA covers consumer leases.

vice agreements. *Williams v. AT&T Wireless Servs., Inc.*, 5 F. Supp. 2d 1142, 1146-47 (W.D. Wash. 1998). The court held that the application for a cell phone service agreement involved an application for credit. *Id.* The court determined that the agreement at issue gave the customer the right to use AT&T's phone services and pay for those services later. *Id.*

Other cases have held that leases are not subject to the ECOA. In *Liberty Leasing v. Machamer*, 6 F. Supp. 2d 714 (S.D. Ohio 1998), the district court held that an equipment lease involving monthly payments was not a credit transaction because the lease involved a contemporaneous exchange of consideration—the lessee made monthly payments that allowed the lessee to continue to exercise its rights under the lease. *Id.* at 717. The Northern District of Illinois reached a similar conclusion in *Head v. North Pier Apt. Tower*, No. 02 C 5879, 2003 WL 22127885, at *3 (N.D. Ill. Sept. 12, 2003). We find these cases persuasive.

We hold that a typical[2] residential lease does not involve a credit transaction. The typical residential lease involves a contemporaneous exchange of consideration— the tenant pays rent to the landlord on the first of each month for the right to continue to occupy the premises for the coming month. A tenant's responsibility to pay the total amount of

---

[2]  We say the "typical" residential lease because, even though the terms of a residential lease are often constrained by state and local laws, we do not foreclose the possibility that the parties to such a lease may craft a lease that might, by its terms, come under the terms of the ECOA. For the purposes of this case, we are concerned only with leases that provide for the lease of residential property for a term and roughly equal rental payments are due to the landlord at the beginning of each month during that term.

rent due does not arise at the moment the lease is signed; instead a tenant has the responsibility to pay rent over roughly equal periods of the term of the lease. The rent paid each period is credited towards occupancy of the property for that period (i.e., rent paid November 1 is credited towards the right of a tenant to occupy the premises in November). As such, there is no deferral of a debt, the requirement for a transaction to be a credit transaction under the Act.

We also find persuasive, at least insofar as residential leases are concerned, the conclusion of the Board that leases are not covered by the ECOA. Congress has delegated to the Board the authority to proscribe regulations concerning the Act. 15 U.S.C. 1691b(a)(1). In response, the Board promulgated Regulation B (12 C.F.R. Part 202). In a Supplementary Information issued in November 1985, as part of a periodic review of Regulation B, the Board, responding to the Ninth Circuit's decision in *Brothers*, stated "that the Ninth Circuit interpreted the ECOA's definition of credit too broadly when it concluded in the *Brothers* case that the granting of a lease is an extension of credit." 50 Fed. Reg. 48,018, 48,020.[3] The Board then concluded that "Congress did not intend the ECOA, which on its face applies only to credit

---

[3]  The parties spend a considerable amount of space in their briefs debating the significance of this Supplementary Information. Laramore argues that the Supplementary Information is entitled to no deference while Ritchie argues that the Supplementary Information is entitled to significant deference or, at the very least, it is persuasive guidance in construing the ECOA. We need not resolve this dispute, however. We are convinced that the ECOA by its terms, and without need to resort to administrative interpretations of the Act, does not cover residential leases. The Supplementary Information is, however, at the least, persuasive.

transactions, to cover lease transactions unless the transaction results in a 'credit sale' as defined in the Truth In Lending Act and Regulation Z." *Id.*

## III.

The ECOA prohibits discrimination against those who receive public assistance when they enter into a credit transaction. Because, however, a residential lease is not a credit transaction as that term is defined in the ECOA, Ritchie's refusal to provide Laramore with a rental application was not subject to the Act. The district court's decision to dismiss Laramore's complaint was appropriate and, therefore, that decision is

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*